25-2303 Appellant's counsel will hear from you first. Thank you, your honor. Sure. I'd like to reserve three minutes for a vote. That's granted. It is particularly a privilege and honor given the approaching 250th anniversary of the birth of our Republic to argue here in Philadelphia. It is also significant and fitting that on this day and in this place, the subject of this oral argument is one of the most important provisions of our Constitution. The freedom of speech provision in the First Amendment. This case has had a long and circuitous path on its way to this court. It has been ten years since Cheryl Borowski, a licensed New Jersey attorney, who was teaching business law to undergraduates as an adjunct professor at Kean University, a public university, was terminated. Counselor, can I ask you a preliminary question here? Your client is seeking declaratory and injunctive relief. Is that correct? Yes. Primarily declaratory, I would say. I saw it much more narrowly, but what you were asking for? Approaching a personnel file of the accusation. For declaratory relief, doesn't there have to be the prospect that this policy is going to be employed against her in the future? Such that we're not just rendering an advisory opinion, but there's some basis for her to have standing here. How does she have standing for declaratory relief? I would submit that because the accusation that she violated the policy is currently in the personnel file, that as long as it's there, it has adverse effects on her efforts to get future employment. That sounds more like a standing argument for injunctive relief. But for declaratory relief, doesn't there have to be some thought that this policy is going to be used against her in the future, such that she needs a declaration that it's invalid? I would submit that the nature of this case is such that it's possible of repetition, but evading review. That is, the state of New Jersey can use this policy, terminate public employees. But this has to be as to her, that she has this prospect that it's going to be used against her, doesn't it? But under the repetition but evading review doctrine, since it could be used repeatedly against others, that gives standing to her, I would submit, as it did in Roe v. Wade. She's not subject to the state policy anymore, right? She doesn't work for the state. Correct, she does not. Okay. But it still affects her life, and she claims has prevented her from getting other employment. Well, that would be relevant for standing for injunctive relief. How is she satisfied? How is her second amended complaint satisfied standing for injunctive relief? That the state of New Jersey be ordered, or Kean University be ordered, to remove the accusation that she violated the policy from her personal life. But what harm is imminent to her? It has continuously affected her since she was terminated. She believes. Well, that's the allegation, is she believes it may have played a role. But she's not alleging that someone is specifically going to use it against her, or it's been communicated. She doesn't even aver that it's been communicated to anyone, does she? She believes, but there's been no discovery. I mean, the case was dismissed. Well, but if she's saying I'm being harmed by this, I would think she has facts that would say this is a problem. The facts are, she pled that she has applied for many jobs in which she has qualified as a licensed attorney to teach business law, as she was doing at Kean. And she's applied several times, and she's been denied those positions. Right, but she doesn't aver that this played a role in any of that decision making. Because that's not a matter of discovery, that's a matter of, oh, by the way, you didn't give me this job, did you see my personnel file from Kean University? I mean, that wouldn't be something that she would get in discovery. Under the standard review, the complaint is entitled to inferences, reasonable inferences, supported by the averments. And among those are that the fact that she's been denied multiple times similar employment has been affected by the fact that she was charged with violating this policy, which is in her personnel file. Well, there's no allegation about dissemination, right? Maybe she's been denied employment because she's a poor teacher. Do we know? I mean, isn't it speculation as to what the reason that she was denied the employment? Well, there were hearings before the Civil Service Commission, and those issues were testified to and discussed before the Civil Service Commission until the appeal was dismissed upon Ms. Myers' direction that the Civil Service Commission did not have jurisdiction, even though it had previously denied a motion to dismiss that had been filed by Kean University. I'm sorry, I don't understand with that. I know about the hearing, but how does that respond to the question, though? There was testimony about her teaching effectiveness at that hearing. All right. Well, we're looking at the complaint, right? Or, you know, one of the amended complaints. Yes. Okay. Well, that's what we have to look at. I didn't see any allegation about dissemination of any of this information to anybody else. So I wonder as well about standing here for injunctive relief. I mean, is there imminent reputational harm here? I think that can help you to get standing. Well, I mean, that would require that the information be disseminated. And without discovery, we don't know whether or how it was disseminated by Kean University. Okay. And we submit that given the vermins and given the standard of review for a C-1 motion, that all inferences have to be made in her favor. Now, your challenge here is a facial challenge to this policy. Correct. Yes. Not as applied to her. Correct.  And we've also indicated that if the court rules on that basis, that we should be allowed to amend it to make it as applied. But we believe we have demonstrated... Well, you're in your second amended complaint now. It seems to me. I mean, I don't know what the district court would do. But it seems to me your as applied challenge would fare better because she is, you know, she's a teacher. And maybe there would be some more leeway from an academic freedom standpoint. But your facial challenge requires a moody analysis, does it not? Correct. And moody requires that the district court do an analysis of comparing the number of instances in which there would be unconstitutional applications versus constitutional applications. Have you done that? I did that myself with respect to this policy. Have you gone through the policy and tried to assert what is conduct, like treating someone in a certain way as compared to verbal calling someone something? Have you done that analysis? Have you looked through that? No, that would require looking at specific cases. However... No, no, I'm looking at the policy itself. Well, yeah, we argue that given the nature of speech that is affected by this policy, there are far more instances involving speech that involve actual discriminatory decisions, which we require actual concrete applications, denials of promotions, denials of hiring, etc. And the potential speech applications far outnumber mathematically the number of actual concrete applications just by analysis. Well, the district court didn't do that analysis, did it? It did not do that analysis. And on the moody, it's required to do that analysis. So you want us to send it back so it can do that analysis? Well, that would be incorrect. Because I did it, and it looked to me like the conduct related was more prevalent in the policy than speech related. Just looking at the language itself. Well, one of the provisions regarding speech is that... I mean, unwanted physical contact, visual contact, engaging in behavior. There's a lot of conduct related non-speech in here. Also, it's a generalized gender-based remarks and comments. Yeah, okay, that's definitely speech. And there are arguably an infinite number of possibilities even under that one provision. And if you look at the preamble to the policy, the second paragraph, it states, this is a zero-tolerance policy. This means that the state and its agencies reserve the right to take either disciplinary action, if appropriate, or other corrective action to address any unacceptable conduct that violates this policy, regardless of whether the conduct satisfies the legal definition of discrimination or harassment. That's an open-ended... There are no guidelines as to how to apply it. There are no definitions of what constitutes discrimination or harassment. It's totally subjective. And I submit, given... Is it really? I mean, it says, aside from the legal definition of discrimination or harassment, if you violate our policy, you can be fired. Is that so crazy? It says, regardless of whether the conduct satisfies the legal definition. It's outside the legal definition of what constitutes discrimination and harassment. And so, any comment... Because it then goes on to describe the example. So we really need to look at... It's just warning you in the beginning, don't depend upon the legal definition of discrimination or harassment. This goes beyond that, just letting you know. And then it talks about exactly what it's defined. It is a violation of this policy. So I think the definition of the prohibited conduct is more important than the lead-in, if you will. Well, again, the trial court did not do an evaluation. It's required under Moody to determine whether the unconstitutional applications are more substantial compared to the constitutional applications. Your time's almost up. Does Garcetti apply in the university scholarship and teaching area? Well, according to Justice Souter, it should not. And he had three concurring opinions with that. And Justice Kennedy also expressed concern. Since Garcetti, there's been no decision from the Supreme Court in that context. However, there have been numerous decisions from lower circuits, including this circuit, that have rejected applying Sabalos in the academic community. Okay, great. Judge Roth, do you have anything more? I have nothing more. Okay, great. Thank you. Okay, thank you. We'll get you on rebuttal.  Good afternoon, Your Honors, and may it please the court, Janine Bilekjian for the state. This court should affirm the district court for either or both of two independent reasons. First, this case fails on threshold grounds because Sheryl Borowski doesn't have standing to seek a declaratory judgment or, to the extent she is asking for it, an injunction against a policy that she is no longer subject to because she is suffering no ongoing injury from that policy that prospective relief would address. What about Mr. Sesselman's view that if this policy could be used against others, declaratory relief is appropriate for her? She simply doesn't have standing if she is not injured by this policy, which she is not right now, to raise abstract claims of others. And standing is enough to resolve this case because her separate damages claims are so clearly barred by sovereign immunity. Even if this court does believe that they're standing here, the plaintiff's claims fail on the merits. The only question before the court today is a facial challenge to the entirety of New Jersey's nearly 30-year-old policy prohibiting discrimination and harassment in the workplace. Why should we not send it back for a Moody analysis? So, a couple reasons, Your Honor. First, the court was brief in its analysis, but it did quote the appropriate standard from Moody, saying that a substantial number of applications would need to be unconstitutional in relation to the plainly legitimate sweep of the policy, and it said that standard didn't apply. But the second reason is that this policy is so clearly constitutional on its face that there's no need to send it back to the district court. And it's constitutional for about— I went over that pretty quickly. I'm sorry. I was going to say the district court must have thought that there were a substantial number of problematic applications because it then went on to address on the merits that neither content— it went to the whole test of content versus viewpoint neutrality, vagueness, and over breadth. So, it must have thought, I guess, that there was a problem. I don't think we can see that in the district court's opinion, Your Honor. I think the district court was simply quoting the appropriate standards that applied to the claims that the plaintiff was bringing. Nothing the district court said indicated, hmm, I think that this might be a problem here. In fact, the district court said that this largely regulates speech in the workplace, which under Garcetti, government employees have no First Amendment interest in that speech. But beyond that, and I was going to start with standing, but I'm happy to go straight to the merits if you would like, Your Honors. Beyond that, there are three broad categories of speech that this policy— excuse me, three broad categories of things that this policy could apply to that don't raise First Amendment issues at all. First is conduct. Judge Rendell, as you noted earlier, a lot of the provisions of this policy apply to conduct. It prohibits treating somebody differently based on their race or religion, discriminating the terms and conditions of employment. That's sort of bread and butter anti-discrimination stuff. Before you go on too much further, your adversary quoted us, I guess what he called the preamble of the policy. What's the significance of that according to you? Are you referring to the zero-tolerance aspect of it? Well, and he had said, regardless of whether the conduct satisfies the legal definition of discrimination or harassment. Right. That's correct, Your Honor. And there's no constitutional problem with that. There's no case saying that government employees' workplace policy must extend only to the letter of discrimination harassment law and no further. You can set a higher bar in the state. Absolutely. Yes, Your Honor. Because the state has strong interest, a state like any employer has strong interest in regulating their workplaces, making sure they function efficiently, making sure that employees are not attacking each other or members of the public based on their identity. And that's exactly what this policy does here. So another category of speech to which this policy relates has no constitutional issues at all, would be, as the district court noted, speech in government employees' official capacities. This regulates all of that. And under Garcetti, government employees don't have any First Amendment interest in that. But how about academic freedom and the ability of a professor to do what Professor Barofsky says she was trying to do, to play devil's advocate and maybe use some things that you wouldn't be able to use in polite discourse or permissible discourse, but in order to make a teaching point. Why shouldn't that be viewed differently? A few reasons, Your Honor. First, this court doesn't even need to address the academic issue because the plaintiff here is bringing a facial challenge to the entirety of this policy as applied to every employee in the state. This isn't a university policy. This is a state employment policy. And she's not raising it just as to Kean employees or just as to professors. So this court doesn't even need to address that. But if it did, it's fully consistent with this court's jurisprudence on professors' academic freedom in the Third Circuit to apply Garcetti to that. And that first prong of Garcetti saying that government employees have no interest in official speech. That's consistent with this court's decisions in cases like Edwards and Brown v. Armenti. We haven't decided yet whether Garcetti applies in the university scholarship and teaching context, right? It depends what you mean exactly by decided because just last term... Does it apply? Well, in Giorgiani, this court did apply the Pickering-Garcetti balancing test to the actions of a professor. The speech in that case was outside of the classroom, but the court noted no problem with applying the balancing test as a whole to that professor. All right, the Supreme Court hasn't told us anything more either, right? No, no, Your Honor. But it's fully consistent with this court's precedence in Edwards and Brown, like I was saying, that have already held that a public university professor has no First Amendment interest, no First Amendment right in what they say in the classroom. Because as this court has held, the academic freedom in that case belongs to the institution, the school, and the professor is acting as the proxy of the school in that instance. So if the school doesn't like what the professor is saying in class or how they're saying it, the school is free to discipline them or change that. A third category of speech to which this raises no constitutional problems whatsoever is speech that's not on a matter of public concern. And if you look at the policy, many of the ways that people would violate it through speech would not be on a matter of public concern. It's hard to see the public interest in, for example, using a derogatory identity-based term against somebody or calling somebody an unwanted nickname or making inappropriate comments about their clothing. Even if that speech, and even if that speech as a citizen, there's no public interest in there, so the First Amendment wouldn't shield an employee from discipline. Only when you get to where the policy is regulating the speech of an employee, the speech of an employee as a citizen on a matter of public concern, already a small subset of what this policy could apply to, do you even get to the Pickering-Garcetti balancing test. And when you get to that balancing test, the state has very strong interest in ensuring that its workplaces are run well, ensuring workplace harmony, ensuring discipline between superiors and employees, and ensuring that employees who are interfacing with the public don't misrepresent the state in a way that is offensive. So this policy is overwhelmingly constitutional, and Ms. Borowski simply cannot succeed on her facial challenge. I would like to briefly, if there are no more questions on that, I would like to briefly turn back to standing just to address... What about our, that would be good to hear actually, but what about our sister courts of appeals? Many of them, even without some more guidance from the Supreme Court after Garcetti, have not applied Garcetti in the university scholarship teaching. Why shouldn't we follow them? I would say the same reasons that I said earlier. First, this question isn't even raised here because the plaintiff isn't making an as-applied challenge. And that's why as-applied challenges really should be the norm. In an appropriate case, this court could address whether it wanted to reverse or at least be in tension with some of its earlier precedents and decide not to apply Garcetti to the university setting. But we don't have that here because this is a facial challenge to the entirety of the policy. All right, so you're saying if there's, without standing we don't even have to get there is what you're saying too, right? Absolutely, yes.  And Ms. Borowski doesn't have standing to pursue her prospective claim for declaratory or injunctive relief against the policy because she's no longer subject to it and she faces no ongoing injury from it. It's black letter law that a declaratory judgment... She does say she's going to suffer ongoing injuries. She says she's going to be denied employment by other people because of this bad policy and that that is going to be an injury. And I'm happy to address that. On the narrow facts before us, Borowski doesn't successfully allege reputational harm that can support declaratory or injunctive relief. So there are two paragraphs in her second amended complaint where she talks about reputational harm. The first is paragraph 50 where she says she believes her failure to be hired from other positions is attributable to her having been abruptly terminated from her teaching position at Kean midway through the semester. That doesn't allege enough harm because, first, it's just subjective belief that she thinks this is causing her to not be hired by other institutions. She doesn't have any facts supporting that. She doesn't say, well, I know I applied to this employer and then they called my references and then suddenly I was out of consideration. So there were ways that she could allege that if she had facts to support the idea that... You come upon... I mean, it's a practical matter. How would you come upon that information? So I think... Are we shutting the door on all these claims then? I mean, how often do prospective employers say, we didn't hire you because... You know, you don't have usually an ongoing discussion about the reasons if they don't hire you, right? I don't think you would need for a prospective employer to say we didn't hire you because of what happened at Kean. I think that a plaintiff, in an appropriate case, could allege facts on information belief showing that it looks like this is why she wasn't hired. For example, the example I just came up with. If the interview goes well and the employer says, OK, we're calling your references and then they don't get the job and then this happens a couple times, that might support a reasonable inference that maybe there's something wrong with my references and that's why I didn't get the job. We don't have that here. We have no idea what Borowski's employment search looked like. We don't know if she just sort of dashed off a few applications and nobody was interested at all for other reasons. So that doesn't support reputational harm here. It also doesn't support reputational harm because the harm that she alleges in that specific paragraph is from her having been taken out of class, not having been found to be in violation. So even if this court were to issue a declaratory judgment or injunction against the policy, that wouldn't change the historical fact that she was, in fact, taken out of her class, which she is alleging caused the harm. So there's no redressability there. The second paragraph in her second amended complaint where she alleges reputational harm is paragraph 62, where she says the determination that she violated the policy remains a permanent part of her employment record at Kean and stands as a black mark on her reputation that she's had no opportunity to remove. But again, she doesn't explain how this determination, sitting in Kean's files, has caused her reputational harm because she doesn't allege that it's been disseminated to anybody, much less that Kean is likely to disseminate it to anyone in the future. And under the Supreme Court's precedent in TransUnion, it's not sufficient to show harm just to say that somebody else has derogatory information about you. You have to say that they have disseminated that information. She doesn't allege that here. And so there is no standing for the prospective relief claims. Now, I believe you take the position that they've really only asked for declaratory relief, right? So it is a little confusing. Yes, her first amended complaint, which is the one that was dismissed by the district court, only asked for declaratory relief. In her second amended complaint, she does add on and ask for injunctive relief. That's the one that the district court denied amendment as futile. But either way, the standing analysis is the same for both. Well, I mean, are you making an argument that it's been forfeited in some way, a request for injunctive relief? I'm not sure that I would say that it is forfeited, because she did ask for that in the second amended complaint at the district court. The district court held that amendment was futile. So that claim was never actually filed. So it's possible. OK. If there are no further questions, we would ask to affirm the judgment. Hold on. Judge Roth, do you have anything more? Nothing further. Thank you. OK. Go ahead. If there are no further questions, we would ask you to affirm the judgment of the district court. Thank you. Thank you, counsel. And we'll hear rebuttal. Counsel, has there been any other litigation regarding this policy? Not that I'm aware of. Not that I'm aware of. So first of all, yes, the trial court did mention Moody, but didn't do a Moody analysis. Just mentioned it. The Edwards decision was a case in which the professor was clearly proselytizing religion in the classroom. The court held that went beyond, even under academic freedom, what a professor is allowed to do. There's no evidence that Ms. Brodkowski had ever proselytized religion or proselytized any of the views that she was indicating constitute the laws she was teaching. But the court went on to rule against the potential unconstitutionality under vagueness, over breadth, et cetera, et cetera. So since it did that, there are no unconstitutional applications. So it really didn't need to do a Moody analysis, did it? I mean, it said it's not overbroad, it's not vague, it's content neutral. So there's nothing unconstitutional about it. So you can't really do a Moody analysis because it has to weigh the unconstitutional versus the constitutional. That's subject to our argument that, yeah, it does have vague provisions and is overbroad. And therefore, a Moody analysis is required. Or I'm just saying the reason the district court didn't feel it needed to do it. Well, but it should have, is our position. Because there are clearly vague and overbroad provisions. I mean, the policy states, this applies to every public employee in the state of New Jersey. That's both at the state level and the local level. There are 650,000 public employees in the state of New Jersey. This applies, in the case of Pickering, that was a public statement that a high school teacher made about the budget of a high school or school district. That was a public statement. This applies to conversations between employees in New Jersey. And if an employee is offended. Well, it doesn't say if an employee is offended. Where does the policy say if a public employee is offended? That's because it's vague. And it says, using derogatory references with regard to any of the protected categories in any communication. Well, what one employee thinks is derogatory, another employee may not think it's derogatory. It's subjective. But it's with regard to the protected categories. So it has to be derogatory with respect to gender, age, disability. And derogatory is a defined term. But the categories are like 20 different categories. They go well beyond Title VII and Title IX. Well, I guess that's why I asked also if there's been litigation about this policy. Because you think if it's so vague or overbroad that someone's going to be challenging it in some way. But with this type of detail, isn't there a reasonable opportunity to understand what's prohibited? I mean, you say, look at this. Doesn't that give employees notice of what is prohibited? I don't believe so. And it says, treating one employee different from another. Does that mean it includes sexism? So as an example, we give in the brief. If a male employee holds the door open for one female who's Caucasian but not for another female who's not Caucasian, is that a violation of the policy that they can be terminated for? I mean, Judge Alito's analysis in the Sachs case is right on point. Judge Alito, before he was elevated to Supreme Court, held that the policy in that case was clearly unconstitutional, violated the First Amendment. And it was totally anathema to the First Amendment. That's what this policy is. It's a speech code. And in terms of addressability, how the claim was pled for future for injunctive relief, this was a C1 motion. It's supposed to be judged based on the affirmance alone, not with additional. You don't have to put it in your complaint. All the proof you intend to bring to prove your case of reputational harm. It's sufficient that you have what would be a rational inference that you applied for all these jobs. You were qualified for them. The only black mark in your record is what happened at Kean. And you're being turned down from all these positions. That's in the complaint. That should be sufficient. It runs under a C1 motion.  Thank you. Judge Roth, do you have any other questions? No, I don't. Thank you. Okay. Thank you, counsel. We thank all counsel for their excellent argument today and for their briefs. We'll take the case under advisement. Thank you. Thank you. Judge Roth, we good to go? Yeah. Okay. Great. Thank you.